Janis Lee Kirk,

                    Plaintiff,       Case No. 18-10107

v.                             Judith E. Levy
                                     United States District Judge

County of Washtenaw, Kellie
Powdhar, Nicholas Burleson,       Mag. Judge Mona K. Majzoub
Sabrina Pattillo, Phuong Le, Mark
Somolenski, and Amy Descombes,

                    Defendants.

_____/

## OPINION AND ORDER GRANTING DEFENDANT'S PARTIAL MOTION TO DIMISS [24] AND DENYING PLAINTIFF'S MOTION TO AMEND [43]

This case arises out of a series of events that took place between plaintiff Janis Lee Kirk's pretrial detention at the Washtenaw County Jail and her hearing before the Washtenaw County District Court. Her claims under 42 U.S.C. § 1983 more or less correspond to the events on either side of her transfer to the hospital. On one side is plaintiff's claim regarding the medical care she was given for withdrawal symptoms during her detention; on the other are her claims regarding the sexual

assault by defendant officer Kellie Powdhar while she was hospitalized. As to her medical care, plaintiff alleges that defendants were deliberately indifferent to her serious medical needs under the Due Process Clause of the Fourteenth Amendment. The allegations that flow from the sexual assault include claims for excessive force, due process, and conditions of confinement under the Fourteenth Amendment, as well as claims under the Elliot Larsen Civil Rights Act of Michigan, Mich. Comp. Laws § 37.2302. Kirk also raises Fourth and Fourteenth Amendment claims against defendant Washtenaw County.

This opinion only addresses plaintiff's claims regarding her medical care in detention. Defendant Amy Descombes, a Licensed Practical Nurse ("LPN") at the jail who provided or was responsible for some of Kirk's medical care, filed a motion to dismiss. (Dkt. 24.) Kirk subsequently filed a motion seeking leave to amend her complaint. (Dkt. 43.)

## I.     Background

Kirk was taken to the Washtenaw County Jail for pretrial detention on May 12, 2015. (Dkt. 1 at 3.) She alleges that defendants Nicholas Burleson, Phuong Le, Sabrina Pattillo, and Mark Somolenski, all police officers, and Amy Descombes, "a medical staff person" later identified as

an LPN, were aware that Kirk would be detoxing and need medical monitoring. (*Id.* at 2–3.) Between May 12 and May 17, 2015, Kirk suffered from withdrawal symptoms, including lightheadedness and other undescribed "symptoms associated with detoxing from substances."[1] (*Id.* at 3–4.) Kirk asserts that the police officer defendants and Descombes were continuously aware that she was detoxing because she complained of her symptoms throughout her detention. (*Id.* at 2–4.)

After five days in custody, Kirk "was walking in the medical unit unsupervised and fell and hit her head, causing her to pass out." (*Id.* at 4.) Descombes and the defendant officers revived Kirk. (*Id.*) Once more, Kirk passed out, fell, and hit her head.[2] (*Id.*) Afterwards, she began to have hallucinations and low blood pressure, and for a third time that day, Kirk passed out, fell, and hit her head. (*Id.*) She was taken to Saint

---

[1] In her proposed amended complaint, Kirk identifies these substances as heroin and crack cocaine. (Dkt. 43 at 6.) *See supra* Section III.C.1.

[2] The exact order of losing consciousness, falling, and hitting her head is inconsistent across the three falls described in the operative and proposed amended complaint. But in both complaints, Kirk's first fall begins with falling and ends with her losing consciousness, and the loss of consciousness appears to be the source of her second and third falls. (Dkt. 1 at 3; Dkt. 43-3 at 8–9.)

Joseph Mercy Hospital for treatment, though she remained in custody. (*Id.*) As a result of her falls, Kirk suffered head injuries. (*Id.* at 12.)

From 7:00 p.m. that day, May 17, 2015, until 7:00 a.m. on May 18, 2015, Powdhar was on duty in Kirk's hospital room. (*Id.* at 4.) He made "vulgar and outrageous comments to [Kirk], including, but not limited to, comments pertaining to his genitalia, oral sex, and prostitution." (*Id.* at 5.) Ultimately, Powdhar sexually assaulted Kirk, and Kirk reported it to county employees when she arrived for her hearing at the Washtenaw County District Court on May 20, 2015. (*Id.* at 7.)

The subject of the current motions to dismiss and amend the complaint are based on Kirk's claims against Descombes. Kirk's claims against the other defendants are not addressed in the motion to dismiss, nor does Kirk's proposed amended complaint make any modification regarding the facts alleged or claims against the other defendants. As clarified in her response to Descombes' motion to dismiss, Kirk makes one claim against Descombes in her operative and proposed amended complaints: that Descombes was deliberately indifferent to her serious medical needs under the Due Process Clause of the Fourteenth Amendment. (Dkt. 1 at 12–13; Dkt. 34 at 2.) In her operative complaint,

Kirk alleges that Descombes did not "immediately administer proper medical treatment when [Kirk] fell and injured her head." (Dkt. 1 at 12.) Then, Kirk claims that this lack of proper care, the delay in care, and a "failure to ensure that elementary precautions were taken" caused her condition to worsen. (*Id.*) Finally, Kirk states that Descombes prevented her from accessing adequate medical care and personnel. (*Id.*) In plaintiff's view, Descombes was therefore deliberately indifferent to Kirk's serious medical needs, which caused her to suffer a head injury and to be in the hospital where defendant Powdhar sexually assaulted her.[3] (*Id.* at 12–13.)

---

[3] At oral argument, Kirk abandoned this bizarre theory of causation—that but for Descombes' failure to treat her, Kirk would not have fallen, and if she had not fallen, she would not have had to go to the hospital, and if she had not gone to the hospital, she would not have been sexually assaulted there by Powdhar. However, she neglected to remove this allegation from her proposed amended complaint, which strangely proposes "transferring [p]laintiff to an outside facility such as a hospital" as a proper form of medical treatment that defendants failed to provide. (Dkt. 43-3 at 5, 18.) The Court assumes this was an oversight. But in the event it was not and Kirk continues to allege that Powdhar's sexual assault is an injury under her § 1983 claim against Descombes, the Court dismisses her complaint to that extent. In § 1983 cases, "normal causation principles apply." *Sykes v. Anderson*, 625 F.3d 294, 314–15 (6th Cir. 2010). Here, Kirk fails to plead facts that would prove a reasonable person who was an LPN at the jail could have foreseen that Powdhar's sexual assault at the hospital was among the risks of her conduct related to Kirk's medical care. *See* Restatement (Third) of Torts, § 19 cmt. c (Am. Law. Inst. Oct. 2018 Update).

In response, Descombes filed a motion to dismiss. (Dkt. 24.) Kirk then filed a motion seeking leave to amend her first complaint. (Dkt. 43.) Descombes opposes Kirk's motion to amend. (Dkts. 45, 46.) A hearing was held on both motions on June 14, 2018.

## II.    Legal Standard

When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must "construe the complaint in the light most favorable to the plaintiff and accept all allegations as true." *Keys v. Humana, Inc.,* 684 F.3d 605, 608 (6th Cir. 2012). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff's claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A plausible claim need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A party seeking to amend a claim, when such an amendment would not be as a matter of course, "may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Leave should be denied where the amendment demonstrates defects "such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962). "A proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss." *Parchman v. SLM Corp.*, 896 F.3d 728, 738 (6th Cir. 2018) (quoting *Beydoun v. Sessions*, 871 F.3d 459, 469 (6th Cir. 2017)).

## III. Analysis

### A. Legal Framework

A plaintiff asserting a § 1983 claim must establish the following: "(1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under color of state law." *Sigley v. City of Parma Heights*, 437 F.3d 527, 533 (6th Cir. 2006). "The

Eighth Amendment 'forbids prison officials from "unnecessarily and wantonly inflicting pain" on an inmate by acting with "deliberate indifference" toward [her] serious medical needs.'" *Jones v. Muskegon Cty.*, 625 F.3d 935, 941 (6th Cir. 2010) (quoting *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 895 (6th Cir. 2004)). The Due Process Clause of the Fourteenth Amendment extends this protection to pretrial detainees. *Blackmore*, 390 F.3d at 895 (citing *Bell v. Wolfish*, 441 U.S. 520, 545 (1979)). To show a constitutional violation through deliberate indifference, a plaintiff must satisfy "objective and subjective components." *Id.*

For an inadequate medical care claim, the objective component requires that "the medical need at issue is sufficiently serious." *Alspaugh v. McConnell*, 643 F.3d 162, 168 (6th Cir. 2011) (quoting *Blackmore*, 390 F.3d at 896). A serious medical need is "one 'that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Jones*, 625 F.3d at 941 (quoting *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2000)).

To meet the subjective component, a plaintiff must plead that "prison officials have a sufficiently culpable state of mind in denying medical care." *Blackmore*, 390 F.3d at 895 (quoting *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000)). This is required 'to prevent the constitutionalization of medical malpractice claims.'" *Rouster v. Cty. Of Saginaw*, 749 F.3d 437, 446–47 (6th Cir. 2014) (quoting *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001)). A plaintiff does not need to "show that the [state actor] acted with the specific intent to harm," but that the defendant recklessly disregarded a substantial risk of serious harm to the plaintiff. *Dominguez v. Corr. Med. Servs*, 555 F.3d 543, 550 (6th Cir. 2009) (quoting *Phillips v. Roane Cty.*, 534 F.3d 531, 540 (6th Cir. 2008)). Even if harm occurred, an official "may be found free from liability if they responded reasonably." *Preyor v. City of Ferndale*, 248 F. App'x 636, 644 (6th Cir. 2007) (quoting *Farmer v. Brennan*, 511 U.S. 825, 844 (1994)).

### B. Motion to Dismiss Operative Complaint

Plaintiff's operative complaint cannot survive a 12(b)(6) motion. Although Kirk's complaint contains sufficient factual matter which, accepted as true, proves that she meets the objective component of her

deliberate indifference claim, she fails to sufficiently plead the subjective component.

### 1. Objective Component

To show her medical need was sufficiently serious, Kirk must plead that her need "is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Jones*, 625 F.3d at 941 (quoting *Harrison*, 539 F.3d at 518). "Courts have found withdrawal symptoms to qualify as a serious medical need." *French v. Davies Cty.*, 376 F. App'x 519, 522 (6th Cir. 2010). In those instances, there was a "clear manifestation of [an] internal physical disorder." *Preyor*, 248 F. App'x at 642 (quoting *Blackmore*, 390 F.3d at 899–900). In *Preyor*, vomiting, diarrhea, laying on the floor, and complaints from the plaintiff about his symptoms and withdrawal condition were clear manifestations of a physical disorder, withdrawal and diabetes, that were obvious to a lay person. *Id.*

Plaintiff meets the objective component. Even without crediting her vague "symptoms associated with detoxing," Kirk has pleaded that at various points she was lightheaded, passed out and hit her head three times, had low blood pressure, experienced hallucinations, complained of

her symptoms throughout her stay, and told defendants of her belief that she was in withdrawal. These symptoms are analogous to the vomiting, diarrhea, and other manifestations of withdrawal the plaintiff suffered in *Preyor*. As in *Preyor*, Kirk suffered from symptoms that clearly showed she had an internal physical disorder. A lay person would certainly recognize that her withdrawal symptoms, especially her three bouts of losing consciousness and hitting her head, necessitated a doctor's attention. Therefore, Kirk's pleadings satisfy the objective component of a deliberate indifference claim.

## 2. Subjective Component

Kirk's initial complaint does not sufficiently plead the subjective component of her deliberate indifference claim against Descombes. A plaintiff can satisfy the subjective component of a deliberate indifference claim by pleading that the defendant "(1) subjectively knew of a risk to the inmate's health, (2) drew the inference that a substantial risk of harm to the inmate existed, and (3) consciously disregarded that risk." *Jones*, 625 F.3d at 941. Kirk successfully pleads that Descombes subjectively knew of a substantial risk of harm to her, but fails to plead that Descombes consciously disregarded the risk.

As a preliminary matter, plaintiff "must state a plausible constitutional violation against each individual defendant—the collective acts of defendants cannot be ascribed to each individual defendant." *Reilly v. Vadlamudi*, 680 F.3d 617, 626 (6th Cir. 2012) (citing *Heyne v. Metro Nashville Pub. Sch.*, 655 F.3d 556, 563 (6th Cir. 2011); *Iqbal*, 129 S. Ct. at 1948) (explaining that knowledge must be specifically attributed to each defendant and cannot be imputed across defendants). Kirk fails to plead that Descombes had knowledge of Kirk's second fall, third fall, and worsening symptoms after the first fall (hallucinations and low blood pressure). She also does not plead that Descombes was even involved in her care at the time of the subsequent falls.

As to the second fall, the complaint states that "[p]laintiff was left unsupervised again by [d]efendants and then passed out again, causing her to fall and hit her head, once again. At that time, [d]efendants were aware that [p]laintiff would be detoxing and should be medically monitored." (Dkt. 1 at 4.) This does not set forth Descombes' individual knowledge or conduct regarding the second fall. Therefore, it is impossible for the Court to determine whether she consciously

disregarded a substantial risk of harm to plaintiff that she was aware of after Kirk's second fall.

Plaintiff's pleadings about her third fall and worsening symptoms are similarly lacking. For the third fall, plaintiff merely states: "Defendants [sic] claim [p]laintiff was fine and didn't need to be monitored. After being left alone for a short time, [p]laintiff passed out, causing her to fall and hit her head." (*Id.*) And for her worsening symptoms, Kirk only alleges that she experienced hallucinations and low blood pressure, and "[d]efendants claim [p]laintiff was fine and didn't need to be monitored." The Court cannot impute knowledge of Kirk's second and third falls or her worsening symptoms to Descombes pursuant to *Reilly*, nor can it guess what her course of conduct may have been. Plaintiff must plead that Descombes had knowledge of her condition and what her course of conduct was to determine if she consciously disregarded risks that were substantial to plaintiff's health. These deficits in the complaint require the Court to limit its review of plaintiff's allegations against Descombes to the first fall.

> i. *Whether Descombes subjectively knew of a risk to plaintiff's health and drew the inference that a substantial risk of harm to plaintiff's health existed.*

Pleadings that put forth "[c]ircumstantial evidence" and establish "that the risk was obvious" can support the inference that an official was aware of a medical risk and that it was substantial. *Dominguez*, 555 F.3d at 550 (quoting *Terrance v. Northville Reg'l Psychiatric Hosp.*, 286 F.3d 834, 843 (6th Cir. 2002)). In *Dominguez*, a nurse who knew that a prisoner was likely suffering from heat exhaustion and that his condition had worsened, was subjectively "aware of risks associated with excessive heat, dehydration, and heat stroke" and had inferred that the risk was substantial. *Id.* at 550–52. There, the Sixth Circuit considered the obviousness of the new symptoms plaintiff began to experience, including vomiting, suffering from a headache, and sweating, as well as the fact that the defendant was a trained nurse, to determine that she was subjectively aware of a substantial risk. *Id.*

Plaintiff successfully pleads that Descombes was subjectively aware of a substantial risk up to the time of her first fall based on circumstantial evidence and the obviousness of the risk. According to the operative complaint, Descombes knew plaintiff was in withdrawal and

exhibiting withdrawal symptoms. She also knew that Kirk's condition had worsened because she revived Kirk after she had passed out and hit her head. Like the vomiting, headache, and sweating in *Dominguez*, Kirk's loss of consciousness, fall, and head injury were obvious signs her withdrawal had become a substantial risk to her health. As a trained medical professional, Descombes would have known withdrawal was a medical risk. Given Kirk's fall, a new symptom she had not experienced earlier, plaintiff has adequately pled facts to support her allegation that Descombes would have made the inference the risk had advanced to a substantial one. Like the nurse in *Dominguez*, Descombes subjectively knew of a substantial risk given her medical background and the obviousness of Kirk's new symptom.

### ii. Whether Descombes consciously disregarded the substantial medical risk to Kirk.

Courts "distinguish between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Alspaugh*, 643 F.3d at 169 (quoting *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir.1976)). When a plaintiff alleges inadequate medical treatment, she must show that care given was "so grossly . . . inadequate . . . as to shock the

conscience" or "so cursory as to amount to no treatment at all" to show conscious disregard of a substantial risk of harm. *Terrance*, 286 F.3d at 843–44 (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)). For example, in *Preyor*, officers consciously disregarded a detainee's serious medical need, detoxing and diabetes, because they only allowed the detainee access to a restroom; the officers did not seek additional medical treatment, even though the plaintiff was "'curled up' and 'trembling' in a corner of a cell" and "his condition had significantly worsened since paramedics were last summoned." 248 F. App'x at 644.

But receiving some immediate medical attention, even if more aggressive treatment is needed later, may not be grossly inadequate or cursory. This is illustrated in *Alspaugh*. Although the prisoner eventually needed neck surgery, a nurse responded reasonably when she immediately examined the prisoner after the injury occurred, but determined further treatment could wait until the next day. 643 F.3d at 169. There, the court found that "[w]hile at multiple points . . . Alspaugh certainly would have desired more aggressive treatment," his treatment was not so cursory that it was not treatment at all. *Id.*

Plaintiff does not adequately plead that Descombes consciously disregarded a substantial risk, or responded unreasonably. Kirk alleges that Descombes did not administer immediate medical treatment; delayed treatment; and prevented Kirk from receiving proper medical treatment. However, her pleadings fall short because they lack additional factual allegations that are necessary to plausibly plead that Descombes consciously disregarded a substantial medical risk to Kirk.

First, Kirk does not plead that Descombes failed to treat her. To the contrary, she pleads that after her first fall, "Descombes got [p]laintiff to be responsive." (Dkt. 1 at 4.) Unlike *Preyor*, where the circumstances showed that providing a restroom was an absurd, reckless medical response that amounted to no treatment at all for a chronic diabetic at that stage of withdrawal, the facts as Kirk alleges them are qualitatively different. In response to her fall and lack of consciousness, Descombes revived her, which is precisely the kind of medical care one would hope for; it addressed what Descombes knew to be Kirk's worst withdrawal symptom at that point, her loss of consciousness. Kirk fails to provide any factual detail that explains how Descombes' treatment was constitutionally inadequate; she only makes passing references to

"proper medical treatment," "immediate treatment, and "elementary medical precautions." (Dkt. 1 at 12.) These are not well-pleaded allegations, but rather, are unsupported conclusions.

Kirk may wish that Descombes had provided further treatment after her first fall because she eventually required hospitalization. But the availability of different, more aggressive treatment, whether it is medication, supervision, hospitalization, or something unspecified, does not mean that a failure to provide it is necessarily a conscious disregard of a substantive medical risk without more. *See Alspaugh*, 643 F.3d at 169. Like the plaintiff in *Alspaugh*, Kirk received immediate treatment— she was successfully treated for the fall. Though Kirk does not explicitly plead that Descombes should have provided more treatment and did not, the Court infers that Descombes made the determination that no further action was required at that time, as the nurse did in *Alspaugh* after examining the plaintiff's neck injury. Kirk provides no facts to support her allegation that Descombes' response was constitutionally inadequate or so cursory that it amounted to no treatment.

Though Kirk alleges that Descombes delayed medical treatment and prevented her from receiving other medical attention or treatment,

she also fails to support these conclusions. The complaint does not address how Descombes personally delayed or interfered with any medical treatment. Therefore, those conclusions are inadequate. For these reasons, Kirk fails to state a claim for which relief can be granted, and therefore her initial complaint does not survive Descombes' motion to dismiss.

## C. Motion to Amend Complaint

Although plaintiff attempts to cure some of the deficiencies described above in her proposed amended complaint, plaintiff's amendment is futile because it would not survive a Rule 12(b)(6) motion. Again, though she meets the objective component of the inadequate medical assistance claims against Descombes and Riley, she fails to satisfy the subjective component.

### 1. Amendments to the Operative Complaint

In response to the Court's requests at oral argument on defendant's motion to dismiss, plaintiff presents a somewhat more detailed complaint. In her proposed amended complaint, Kirk names Barbara Riley as another defendant, adds additional details about Descombes' and Riley's authority and their presence during Kirk's detention, and

clarifies the timeline of events. Kirk also adds greater specificity to the subjective component of her claim against Descombes and, now, Riley.[4]

Plaintiff alleges that Descombes and Riley are LPNs. (Dkt. 43-3 at 4.) She further alleges that they had the duty and authority to report withdrawal symptoms that presented an excessive risk to Kirk's health and safety to their supervisor, to identify her as a fall risk, and to adhere to certain policies. Kirk argues that reporting her symptoms would have led to more supervision to prevent subsequent falls, medication such as methadone to alleviate her symptoms, or an earlier transfer to a hospital. (*Id.* at 4–5.)

Plaintiff also adds factual detail to her pleadings. First, she clarifies that she was in withdrawal from heroin and crack cocaine. (Dkt. 43 at 6.) Then, she clarifies that Descombes performed her intake paperwork and

---

[4] Though the Court appreciates plaintiff's efforts to comply with its requests, it is generally unhelpful that plaintiff responded to some of the requests only in her Amended Motion for Leave to File First Amended Complaint, rather than reflecting them in her amended complaint itself. *See Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001) (noting courts can only consider allegations and attachments "referred to in the plaintiff's complaint" that "are central to her claim"). For example, the Court cannot consider any of the attachments to Kirk' Amended Motion for Leave to File First Amended Complaint (Dkt. 43), or that fluids and anti-nausea medication could have been given to plaintiff because the proposed amended complaint contains no reference to them. (Dkt. 43 at 6–7.)

placed her in "medical observational housing." (*Id.* at 6.) Kirk also states that after her first fall, Descombes performed a medical assessment, determined she could stay in medical observational housing, and gave her instructions not to walk unassisted. (*Id.* at 8.) Plaintiff adds that she has a history of seizures, which was reflected in jail records from 2014, and noted in her screening examination performed by a different, unnamed staff member. (*Id.* at 7.) Kirk then provides more details about her withdrawal symptoms: low blood pressure, lightheadedness, visual and auditory hallucinations, head pain, disorientation, a pulse rate of forty-four, and a seizure after her third fall before she was taken to the hospital. (*Id.* at 6–10.)

Second, plaintiff solidifies the timeline of events. Again, the day after she was detained, May 12, 2015, staff performed a screening examination on plaintiff. (*Id.*) Then, at 2:30 a.m. on May 17, 2015, Riley noted plaintiff's low blood pressure. (*Id.*) And plaintiff's falls occurred at 9:00 a.m., 10:15 am, and 11:00 a.m. that day. (*Id.* at 8-10.)

Plaintiff also refines some of her allegations about the subjective component of her deliberate indifference claim. She alleges that Descombes would have had the knowledge to report to her supervisor

plaintiff's withdrawal symptoms after she completed the intake paperwork and after plaintiff's first fall. (*Id.* at 7–8.) This, Kirk argues, would have led to medication or additional care. (*Id.*) Descombes also should have marked Kirk as a fall risk, given Descombes' knowledge of her first fall, her involvement after the fall, and her warning that plaintiff should not walk without assistance. (*Id.* at 9.) She also alleges that Riley should have reported the low blood pressure to her supervisor after she noted it pursuant to the Clinical Opiate Withdrawal Scale. (*Id.* at 7–8.)

## 2. Objective Component

Plaintiff successfully pleads again that her medical need was sufficiently serious. According to her proposed amended complaint, Kirk was exhibiting symptoms of detoxing from heroin and crack cocaine with a history of seizures.[5] The additional details, including her history of seizures and other symptoms, such as head pain and chills, do not change the analysis of the objective component from the operative complaint. As

_____

[5] During the hearing on these motions, plaintiff stated that her serious medical need included her withdrawal and her history of seizures. A chronic condition can contribute to the objective component of a serious medical need. *E.g.*, *Preyor*, 248 F. App'x at 642 (discussing diabetes as part of the objective component, along with withdrawal from heroin). Furthermore, the amended complaint raises the permissible inference that the seizure after the third fall contributed to her head injuries. (*Id.* at 10.)

before, a lay person would know she required medical attention from a doctor. *See Jones*, 625 F.3d at 941. Therefore, plaintiff has adequately pleaded a sufficiently serious medical need.

### 3. Subjective Component

Plaintiff's amended complaint falters again at the subjective component of her deliberate indifference claim. Kirk must plead that Descombes and Riley "(1) subjectively knew of a risk to the inmate's health, (2) drew the inference that a substantial risk of harm to the inmate existed, and (3) consciously disregarded that risk." *Jones*, 625 F.3d at 941; *see also supra* Section III.B.1–2. Kirk fails to make any allegations which would prove that Descombes consciously disregarded the risk to Kirk. Plaintiff also fails to plead that Riley inferred the medical risk was substantial and then consciously disregarded the risk to Kirk.

### *i. Descombes*

Once again, the Court must restrict its analysis to the well-pleaded allegations up to the first fall. Because plaintiff failed to address the deficiencies discussed in the hearing about Descombes' subjective knowledge of and involvement in the second and third falls, plaintiff's

amended complaint suffers from the same deficiencies as the initial complaint. The portion of the amended complaint that addresses the second and third falls is nearly identical to the initial complaint, aside from adding a specific time for each fall. (*See* Dkt. 43-3 at 9–10.) The Court expressly told plaintiff to submit a "renewed motion to amend that actually cleans up the complaint." This motion does not.

At the hearing, Kirk argued that the Court could draw the inference that Descombes was present for the entire day if she were present at the first fall. However, this inference would directly contravene *Reilly*. Again, plaintiff "must state a plausible constitutional violation against each individual defendant." *Reilly*, 680 F.3d at 626 (citing *Heyne*, 655 F.3d at 563; *Iqbal*, 129 S. Ct. at 1948). Undoubtedly, it requires more work on the part of plaintiff to delineate the knowledge and actions of each defendant, but that is what § 1983 claims require. *See id.* The proposed amended complaint fails to reflect Descombes' subjective knowledge of a substantial risk to Kirk and what conduct constituted conscious disregard after the first fall, even after obtaining the Court's guidance on the complaint's serious shortcomings. Therefore, the Court can only

consider Kirk's deliberate indifference claim against Descombes based on the allegations up to her first fall.

Though Kirk adequately pleads that Descombes subjectively knew of a medical risk and drew the inference that the risk was substantial, she fails to set forth factual matter which if proven would show Descombes consciously disregarded the risk. Her initial complaint successfully pleaded the first two elements of the subjective component of a deliberate indifference claim, and the additional factual matter, her history of seizures, added in the amended complaint does not change the analysis. *See supra* Section III.B.2.

However, plaintiff has not adequately pleaded that Descombes consciously disregarded that risk. Kirk alleges that Descombes should have reported that Kirk was in withdrawal, exhibiting symptoms of withdrawal, and fell so that her supervisor could have provided medication or additional care, such as methadone or transfer to the hospital. She also maintains her earlier allegations that Descombes failed to provide immediate medical attention and prevented her from receiving adequate medical attention. But precedent forecloses her

arguments at each stage Descombes was involved: Kirk's intake and first fall.

When Descombes completed the intake paperwork, Kirk's pleadings indicate that she received adequate medical treatment. At the time of her intake she was not in withdrawal, yet Descombes placed her in medical observational housing. It is not deliberate indifference when medical practitioners do not prescribe withdrawal medications to detainees not yet having withdrawal symptoms, even if they present a risk of withdrawal symptoms. *Bruederle v. Louisville Metro Gov't*, 687 F.3d 771, 778 (6th Cir. 2012). Therefore, Descombes' decision not to report withdrawal symptoms before they manifested so that her supervisor could prescribe methadone was not conscious disregard.

If Kirk hoped to receive other, more aggressive treatment at this stage, this is again analogous to *Alspaugh*. In that case, it was not reckless for the nurse to first examine the prisoner's neck for an injury and wait to pursue other treatments. *Alspaugh*, 643 F.3d at 169. Like the prisoner in *Alspaugh*, Kirk received immediate treatment and alleges no facts to support her allegation that it was not proportionate to the risk presented. At that point, she was not experiencing withdrawal

symptoms, so placing her in medical observational housing was not reckless. Plaintiff has not pleaded any facts that suggest that Descombes consciously disregarded a risk to Kirk or acted unreasonably.

Kirk also fails to plead that Descombes consciously disregarded a substantial risk to Kirk when she treated Kirk after her first fall. Descombes treated plaintiff: she revived Kirk, performed a medical assessment, and then directed Kirk not to walk without assistance. As set forth above, plaintiff has not put forth any factual matter that if true would show that the assessment Descombes completed was so inadequate that it shocks the conscious or so cursory that she was essentially denied medical treatment. *Terrance*, 286 F.3d at 843–44 (quoting *Waldrop*, 871 F.2d at 1033); *see Preyor*, 248 F. App'x at 644; *see also supra* Section III.B.2. Again, plaintiff has pleaded she was treated throughout Descombes' involvement, but wishes she had been given different treatment. *See Alspaugh*, 643 F.3d at 169. Plaintiff may be pleading that Descombes was negligent, but § 1983 is not an avenue to bring malpractice claims. *Rouster*, 749 F.3d at 446–47; *see Westlake*, 537 F.2d at 860 n.5 ("[F]ederal courts are reluctant to second guess medical judgment.").

Plaintiff also pleads that Descombes should have marked her as a fall risk. However, this may set forth a negligence claim, but does not allege deliberate indifference to a serious medical need. Kirk also makes no allegations that suggests she could not hear or obey Descombes' directions to refrain from walking without assistance that would make any other treatment, such as constant, in-person supervision, the only reasonable response. Similarly, Kirk fails to plead that Descombes' failure to mark Kirk as a fall risk was done with conscious disregard for Kirk's withdrawal risks. For the reasons set forth above, plaintiff's amended complaint with respect to her claims against Descombes is futile.

### ii. Riley

Descombes' counsel also challenges the amended complaint with respect to Riley. Plaintiff fails to plead that Riley inferred that Kirk's withdrawal risk was substantial and consciously disregarded the risk. The Court can reasonably infer that Riley would have known Kirk was in withdrawal when she took Kirk's blood pressure because she was in medical observational housing. This satisfies the first element of the subjective component of a deliberate indifference claim.

However, plaintiff sets forth no factual allegations that indicate Riley knew Kirk's withdrawal posed a substantial risk to her. Unlike the defendant in *Preyor*, there is nothing in the pleadings that indicates plaintiff's condition had begun to pose a substantial risk. In *Preyor*, the medical staff knew of a substantial medical risk to plaintiff because they knew that plaintiff was in detox and a diabetic, that he exhibited signs of worsening symptoms, including vomiting, diarrhea, and laying on the floor, and paramedics had been called two times before. 248 F. App'x at 643. Even in this case, Descombes knew of a substantial medical risk to Kirk because she knew Kirk was in withdrawal and that Kirk had experienced some worsening symptoms: losing consciousness, falling, and hitting her head. Kirk has only pleaded that Riley knew that she was suffering from lightheadedness, low blood pressure, and vague "symptoms associated with detoxing." (*Id.* at 7.) Kirk includes nothing about Riley's knowledge of any falls or other symptoms that would prove, if true, she had drawn the inference that Kirk's withdrawal was a substantial medical risk.

Even if the Court granted Kirk the generous inference that Riley was subjectively aware of a substantial medical risk, plaintiff has failed

to include any factual matter that shows Riley consciously disregarded the risk. Kirk alleges that Riley departed from the Clinical Opiate Withdrawal Scale when she did not report the low blood pressure to her supervisor. A departure from protocol can indicate a conscious disregard in some instances, such as the failure to abide by the policy of keeping a prisoner exhibiting signs of heat stroke in a cool area, coupled with the failure to respond to multiple pages for medical assistance. *Terrance*, 286 F.3d at 844–45. But unlike the defendant in *Terrance*, Riley here did no more than depart from policy. In *Terrance*, the court was explicit that it was the "aggregate" of the defendant's actions that made his response unreasonable. *Id.* at 845. Even in a negligence claim, the failure to abide by a practice does not necessarily indicate negligence. Here, it certainly does not indicate recklessness or a conscious disregard without other factual allegations. For these reasons, plaintiff's proposed amended complaint as to Riley would not survive a motion to dismiss, and therefore is futile.

## IV. Conclusion

For the reasons set forth above, plaintiff's motion to amend is DENIED (Dkt. 43) and defendant's partial motion to dismiss is GRANTED. (Dkt. 24.) Defendant Amy Descombes is dismissed.

**IT IS SO ORDERED.**

Dated: November 27, 2018      s/Judith E. Levy
Ann Arbor, Michigan          JUDITH E. LEVY
                         United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on November 27, 2018.

s/Shawna Burns
SHAWNA BURNS
Case Manager